S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB #96512**
Scott.Kerin@usdoj.gov
**STACIE F. BECKERMAN, OSB # 062397**
Stacie.Beckerman@usdoj.gov
1000 S.W. Third Ave., Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
Facsimile:  (503) 717-1117
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:12-CR-00512-KI-01 |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **MICHAEL SERAPIS FREEMAN,** | |
| **Defendant.** | |

The United States of America, through S. Amanda Marshall, United States Attorney for the District of Oregon, and Scott M. Kerin and Stacie F. Beckerman, Assistant United States Attorneys, hereby submits the following sentencing memorandum for the Court's review.  The government asks the Court to sentence the defendant to 60 years' imprisonment, to be followed Life term of supervised release.  There is a $200 statutory assessment.

**A.     Summary of Proceedings.**

On August 21, 2013, the defendant pled guilty to two counts of Production of Child Pornography (Counts 1 and 2 of the indictment), in violation of 18 U.S.C. §§ 2, 2251(a) and

2251(e). The maximum sentence the Court may impose on each count of conviction is 30 years imprisonment, a fine of $250,000, and a life term of supervised release. Each count also carries a mandatory minimum term of 15 years imprisonment and a minimum of five years of supervised release. The defendant is also pending sentencing in Marion County, Oregon Circuit Court for the commission of the sexual abuse on the two victims in this case.

A Presentence Report (PSR) has been completed. Sentencing is currently set for December 4, 2013. The government believes that the facts underlying the defendant's count of conviction, his sentencing guideline calculations and his criminal history are accurately laid out in the PSR. As the PSR notes, the defendant sexual abused his two young daughters, photographed and videotaped the abuse and also distributed it to others for their own deviant sexual gratification. At times, there are those rare cases that demand the maximum punishment available to the Court. This is one of those cases. If it was not for the determination of a group of dedicated law enforcement agents there is no indication that the defendant would have voluntarily stopped abusing the victims in this case, and that is a frightening thought.

The case against the defendant was made after pornography images depicting his abuse of his two minor daughters surfaced in two separate investigations, one in California and one in Colorado.

**California Images**

On June 23, 2011, Homeland Security Investigations (HSI) Los Angeles, California executed a Federal search warrant seeking evidence related to the possession of child pornography. Pursuant to the search warrant digital media was seized and analyzed by a computer forensic examiner. As a result of the examination numerous images and videos of previously unidentified children engaged in sexually explicit conduct was discovered (the

California images). The material was submitted to the National Center for Missing and Exploited Children (NCMEC), Child Victim Identification Program (CVIP) to be checked against the Child Recognition and Identification System (CRIS) in an effort to identify the victims. As a result of the review, NCMEC determined that the submission included 97 image files of a previously unidentified victim of child sexual exploitation.

Of the 97 California images, 87 of them depicted a female prepubescent child (later identified as Victim 1). The other 10 images depict Victim 1 and another female prepubescent child (later identified as Victim 2). Victim 1 was estimated to be between the ages of five and seven years old and Victim 2 was estimated to be between the ages of three and five at the time.

In the California images, Victim 1 was shown in various states of dress and undress. Of the 87 images that show Victim 1 alone, 16 of them involved the lewd and lascivious display of her genitalia, including images of her with her legs spread open exposing her vagina and an image depicting a close up of what appears to be her vagina being spread open with her fingers. Four of the images showed Victim 1 holding a white piece of paper with writing. In two of the images the paper has the words "I like Timmy" written on it. In the other two images the paper has the words and drawing of a heart "I [heart] Timmy." In one of the images Victim 1 is shown holding the sign "I [heart] Timmy" while pulling aside her underwear to expose her vagina.

## Colorado Images

On June 27, 2012, NCMEC CVIP also received material submitted by the Federal Bureau of Investigation which had been discovered on seized media from another child pornography investigation conducted in Colorado. NCMEC CVIP discovered over 200 images and two videos within the submitted material (the Colorado images) that depicting the same children

(Victim 1 and Victim 2) as in the material submitted by HSI Los Angeles. Several of the images submitted by the FBI were the same as images submitted by HSI, however, quite a number of new images and the videos were also discovered.

Nine of the Colorado images depicted Victim 1 and Victim 2 being sexually abused by an adult male subject (later discovered to be the defendant).  The images had been technically manipulated in order to remove the adult male's face from the images where his face would have been visible.  One of the images depicts a naked child (Victim 2) sitting in the lap of the adult male subject, who is also nude. The child is shown sitting on the right leg of the adult male subject with her left leg touching the genital area of the adult male while the other child (Victim 1, also nude) is sitting on the left leg of the adult male subject.  The image has also been technically manipulated to obscure the background.  In three of the images Victim 1 is sitting on the adult male subject's lap with her vagina directly in contact with the adult male subject's penis. In two of those images Victim 1 is using her fingers to spread her labia open.  These images have also been technically manipulated in order to obscure the background.  In two of the images Victim 1 is sitting on the floor in front of the adult male subject, who is sitting in a chair, and Victim 1 is using her right hand to grasp the penis of the adult male subject.  In the second of the two images, Victim 1's mouth is wide open and appears to be about to orally copulate the adult male subject.

Several of the Colorado images also depict Victim 1 and Victim 2 with an adult female, at the time referred to as "Jane Doe" and later identified as the co-defendant Michelle Freeman. In the images "Jane Doe" is posing with the children in the nude.  Some of the images depict "Jane Doe," Victim 1 and Victim 2 lying on their backs with their legs partially spread exposing their genitalia to be photographed.  Other images depict "Jane Doe," Victim 1 and Victim 2 bent

over facing away from the camera with their buttocks in the air and the genitalia and anus of the three individuals are exposed.

Within the Colorado images, agents also discovered some movie files. In one of the movie files, file MvOOO1, which is approximately 1 minute 11 seconds in length, depicts Victim 1 orally copulating the adult male subject (the defendant). In the movie file the defendant can be heard giving Victim 1 instructions, such as "Go faster please." Victim 1 then stops orally copulating the defendant and begins to masturbate him with her hand. The defendant then asks Victim 1 if she wants him to "do it" while she puts her mouth on his penis. The defendant then uses his left hand to place Victim 1's head where he wants it while he masturbates with his right. Victim 1 then states "I don't want it in my mouth." The video ends shortly after.

On a second movie file, Mv0002, which is approximately 43 seconds in length, depicts the defendant straddled across the chest of Victim 1. Victim 1 is lying on her back with her face up and the adult male subject is straddling her so that his penis is directly over her mouth. The defendant is masturbating himself and is overheard telling Victim 1 to open her mouth, which she docs to a very limited extent. The adult male subject then tells Victim 1 "Open your mouth more; it won't hurt you if a little gets in there." The defendant then masturbates himself and ejaculates on Victim 1's face.

### Jane Doe Warrant and the Defendant's Arrest

Based upon the recovered images, law enforcement agents knew they had discovered two previously unidentified sexual abuse victims (Victim 1 and Victim 2). Agents scoured the images for clues and saw that, although the defendant's face was obscured and the victims were unidentified, there were multiple images of an adult female (known at the time only as "Jane Doe") in the recovered images. On August 7, 2012, based upon the

investigation, an agent sought and obtained a "Jane Doe" arrest warrant in the District of Columbia for the adult woman depicted in the recovered images of child pornography. That same day, HSI sent out a nationwide alert/press release seeking assistance in identifying "Jane Doe" and the victims and pictures associated with her.

On September 4, 2012, HSI received multiple tips that "Jane Doe" was in fact Michelle Lee Freeman. On the morning of September 4, 2012, HSI Special Agents also received a call from the Salem Police Department telling them that Michelle Freeman and Michael Freeman had called the police and told them that Michelle Freeman was wanted by federal authorities and they were willing to turn themselves in to the police. The Salem police responded to the Freeman's residence and waited for federal agents to arrive.

Federal HSI agents initially interviewed the defendant. The defendant told them that on September 3, 2012, he received a message from a friend telling him that his wife was on the news and had been listed as a "Jane Doe" on a warrant. The defendant also looked at the picture and identified his wife as being in the picture. The defendant told the agents that he was in a "bad place" and went on to admit to taking nude photographs and videos of his daughter (Victim 1, age 9), herein performing various sexual acts. He also admitted that his other daughter (Victim 2, age 6), was also present while he was doing so.

During the interview the defendant also admitted that he traded via the Internet images of child pornography that he produced (images and movies) involving his daughter (Victim 1) with a person he knew as "Timm." The defendant also received images from "Timm" of 6 to 9 year old girls performing oral sex on an adult male. This trading of child pornography lasted about a month, according to the defendant.

When he was asked to describe the images he took, the defendant admitted that he took pictures of Victim 1 performing oral sex on him and that that all he did with her was touching and oral sex. The defendant also admitted that his wife was involved in touching Victim 1 in three or four of the videos. The defendant also told agents that his wife, Michelle Freeman, might have held the camera when the videos of sex abuse were recorded. The defendant he confirmed he was the adult male depicted in the photographs.

In an interview with Salem Police Detectives the defendant also admitted that he began sexually abusing Victim 1 when she was six (6) and almost seven (7). The abuse began with the defendant touching her vagina and having the victim touch his penis. The defendant said he then began photographing the victim and eventually his wife helped him photograph and film them engaging in sexual acts with the victim. He also admitted to touching the victim's vagina with a vibrator.

The defendant and his wife were arrested on federal charges, via a criminal complaint. The defendant was later indicted on four counts of Production of Child Pornography and one count of Distribution of Child Pornography. His wife and co-defendant was indicted on four counts of Production of Child Pornography. The time span of the criminal conduct runs between February 2010 and June 27, 2012. The defendant and his wife were subsequently indicted in Marion County, Oregon Circuit Court for various acts of sexual abuse of his two daughters. The state charges are also pending.

**B.     Sentencing Guideline Calculations.**

While not bound by the Sentencing Guidelines, Courts must first consult the guidelines and take them into account at sentencing. *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 767 (2005). Even though the guidelines are advisory, they remain influential in an effort to

ensure nationwide consistency in sentencing. *Gall v. United States*, 128 S.Ct. 586, 596 (2007) ("to secure nationwide consistency, the guidelines should be the starting point and initial benchmark" for sentencing); *see also, United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) ("[The] continuing duty of district courts to consult the guidelines is statutory").  After the parties are given a chance to argue for a sentence they believe is appropriate, the court should consider the 18 U.S.C. § 3553(a) factors and decide whether they support the sentence advocated by the parties. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*citing Gall*, 128 S.Ct. at 596-97 n. 6).  The court must then make an individualized sentencing determination based upon the facts. *Id.* The guidelines should not be given more or less weight than the other § 3553(a) factors. *Id.* If the court decides a non-guideline sentence is warranted the Court must ensure the justification is sufficiently compelling to support the degree of variance. *Id.* Once a sentence is selected, the Court must explain its rationale sufficiently to permit meaningful appellate review. *Id.* at 992.

Here, the government believes the defendant's advisory Sentencing Guideline calculations are as follows:

1. **Base Offense Level**, pursuant to U.S.S.G. § 2G2.1(a):                                  32

2. **Specific Offense Characteristics** that apply to the defendant's case:

    - Minor victim under the age of 12, U.S.S.G. § 2G2.1(b)(1):          +4

    - Commission of a sexual act, U.S.S.G. § 2G2.1(b)(2)(A):             +2

    - Distribution of images, U.S.S.G. § 2G2.1(b)(3):                    +2

    - Defendant was parent of minor, U.S.S.G. § 2G2.1(b)(5):             +2

    - Offense involved more than one victim (Multiple Count Adjustment), U.S.S.G. §§ 3D1.1, 3D1.2, 3D1.3 and 3D1.4:       +2

|   |   |   |
|---|---|---|
| • | Offense involved a pattern of activity involving prohibited conduct, U.S.S.G. § 4B1.5(b): | +5 |

3.  **Acceptance of Responsibility**, pursuant to U.S.S.G. § 3E1.1:     -3

4.  **Initial Offense Level:**     48

5.  **Total Offense Level after Chapter 5, Part A adjustment**:[1]     43

The defendant's Criminal History Category is I, With an Offense Level of 43 and a Criminal History Category of I, the defendant's advisory Sentencing Guideline range is a Life term of imprisonment.

C.     **Government's Recommended Sentence.**

The government asks the Court to impose a sentence of 60 years' imprisonment (the statutory maximum sentence available), to be followed Life term of supervised release.  There is a $200 statutory assessment.  In imposing the sentence we ask the Court, on Count 1, to impose the statutory maximum of 30 years' imprisonment, to be followed by a life term of supervised release.  On Count 2, we ask the Court to also impose an additional 30 years' imprisonment, to be followed by a life term of supervised release, to run **consecutive** to the sentence imposed on Count 1.  Defendant will also be required to register as a sex offender as required by law.

There are certain crimes that are so abhorrent to civilized society and so devastate their victims and the community as a whole that the Court should, and must, impose the maximum sentence available to it.  This is one of those cases.  In creating the Sentencing Guidelines, Congress attempted to reflect how serious they viewed various criminal acts.  In creating a guideline structure that advises the Court that the defendant should be sentenced to a term

---

[1] Pursuant to U.S.S.G. Chapter 5, Part A, in those rare instances where the total offense level exceeds 43 (the highest category on the Sentencing Guidelines) the offense level will be treated as a level 43.

imprisonment for Life, Congress could not have been any more explicit about how serious they viewed the defendant's crime.  There is simply no reason for a lesser sentence.  Prior to imposing sentence, we ask the Court to again take a moment and think of the personal hell that these two young children went through, the types of abuse they were subjected to, and the length of time the abuse continued.  There are certain things that no child should ever have to endure, being sexually abused by your parents and having them permanently record those images and then trade them with others for their own deviant sexual gratification is one of them.

      While, due to the heroic efforts of law enforcement, the direct physical abuse of these young children is over, the damage that was done to them is not and may never be and the images recording the abuse will also likely last forever.  While we all hope that the victims of childhood sexual abuse will fully recover, unfortunately, studies show that sexually abused children often suffer for the rest of their lives.  Sexually abused children are more likely to develop depression, be unable to develop healthy relationships later in their lives, experience sexual dysfunctions, are more likely to be suicidal, and have a tendency to become either sexual abusers themselves as adults or become prone to further victimization.  *See e.g.* Brown and Finkelhor, Impact of Child Sexual Abuse: A review of the research, Psychological Bulletin, Vol. 99(1), Jan 1986, 66-77; Schoettle, Child exploitation: A Study of Child Pornography, 19 J. Am. Acad. Child Psychiatry 289, 296 (1980); Densen-Gerner, Child Prostitution and Child Pornography: Medical, Legal, and Societal Aspects of the Commercial Exploitation of Children, reprinted in the U.S. Department of Health and Human Services, Sexual Abuse of Children: Selected Readings 77, 80 (1980).  As the PSR notes:

> The ongoing effects of these crimes on the victims will likely be apparent throughout their lives.  Childhood sexual abuse has been correlated with higher levels of depression, guilty, shame, self-blame, eating disorders, somatic

///

>concerns, anxiety, sexual problems, dissociative patterns, repression, denial and relationship patterns.

PSR, Justification.

In looking at the factors in 18 U.S.C. § 3553(a), such as the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we ask the Court to impose the maximum sentence available. The Court should send the strongest message that it can that the sexual abuse of children will never be tolerated and to commit such crimes guarantees a person will go to prison for the longest term available. A maximum sentence sends the strongest possible message to this defendant and other pedophiles that society will not condone, excuse or tolerate their crimes. Additionally, at the end of the hearing, this Court should do all it can to ensure the defendant, who according to the defendant's own evaluation will present a "low to moderate" risk for sexual recidivism, will never be in a position to ever sexually abuse another child. Given the nature of the defendant's crime and the risks he presents, the only way to do so is to confine him to prison – there should never be a risk of sexual abuse that we find acceptable when it comes to protecting a child.

///

///

///

At the time of sentencing the government asks the Court to dismiss Counts 3, 4 and 5.

The plea agreement contains an appeal waiver.

Dated this 29th day of November, 2013.

          Respectfully submitted,

          S. AMANDA MARSHALL
          United States Attorney

          *Scott M. Kerin*

          SCOTT M. KERIN, OSB # 965128
          STACIE F. BECKERMAN, OSB # 062397
          Assistant United States Attorneys
          (503) 727-1000